IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TYRONE LAVON THOMAS, | } | |
| TDCJ-CID NO.1245702, | } | |
|     Petitioner, | } | |
| | } | |
| v. | } | CIVIL ACTION G-07-472 |
| | } | |
| NATHANIEL QUARTERMAN | } | |
|     Respondent. | } | |

OPINION ON DISMISSAL

Petitioner Tyrone Lavon Thomas, an inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his underlying conviction for murder. (Docket Entry No.1). Respondent has filed a motion for summary judgment, arguing that petitioner is not entitled to habeas corpus relief under § 2254. (Docket Entry No.15). Petitioner has filed a response to the motion. (Docket Entry No.20). After a careful review of the entire record and the applicable law, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

I. FACTUAL AND PROCEDURAL HISTORY

A Texas grand jury indicted petitioner in cause number 02CR0673, alleging that he committed murder. *Thomas v. State*, No.14-04-00472-CR, Clerk's Record, page 2. A jury in the 212th Judicial District Court of Galveston County, Texas heard evidence of the following, as summarized by the Fourteenth Court of Appeals for the State of Texas:

> On February 25, 2002, police responded to a call reporting a suspicious vehicle. The responding officer discovered the body of Albert Barnes lying in the back

1

seat with his pockets turned inside out. Barnes had several lacerations on his head, but the cause of death was a close-range gunshot wound to the back of his head.

The investigation that followed led to several suspects, among them Julio Raveiro and Delena Kent, who were interviewed by police. Kent first lied to police but then implicated Raveiro, appellant, and Charles Aaron Williams, who were arrested. After his arrest, appellant initially refused to talk to police but then made a voluntary statement. In his statement, appellant admitted he, Raveiro, and Williams made plans to rob Barnes, a drug dealer. Raveiro drove appellant and Williams from Wichita Falls, Texas to Dickinson, Texas, where Raveiro and Barnes lived, and took them to a hotel room. Shortly thereafter, Raveiro lured Barnes to his home under pretense of buying crack cocaine. Appellant and Williams were hiding outside Raveiro's home when Barnes arrived. Both appellant and Raveiro had guns, although appellant claims his was unloaded. As Barnes talked to Raveiro outside the house, appellant and Williams ambushed him. Appellant admits he held a gun to Barnes and kicked him while Raveiro and Williams hit and kicked Barnes and emptied his pockets. Appellant told police Barnes offered his assailants more narcotics from his home, which they decided to retrieve. Appellant, Kent, and Williams got inside Barnes's car, with appellant in the front passenger seat and Barnes in the back seat with Williams. Kent drove Barnes's car behind Raveiro, who led in his own car. At this point, appellant claims the events deviated from the plan he admittedly had made with Williams and Raveiro to rob Barnes. Raveiro motioned for Kent to stop near some woods, and then he got out and approached Barnes's car. Appellant said he protested the stop because he wanted to continue to Barnes's home to get the narcotics. Raveiro told appellant to get in Raveiro's car, and as appellant did so, he heard a single gunshot. Appellant claims he did not intend Barnes's death but admits that after the robbery and murder he, Williams, and Raveiro divided Barnes's cash and drugs.

Kent provided a somewhat different account to police and at trial. According to Kent, she heard the men discuss robbing Barnes in Wichita Falls and later saw Raveiro obtain two pistols and some bullets. She witnessed appellant and Williams beat Barnes and drag him, unconscious, to the back seat of his car. Kent testified that Raveiro forced her to drive Barnes's car and that as she drove, appellant sat in the passenger seat beside her and pointed his gun at her. Meanwhile, Williams sat in the back and continued to hit Barnes with the other gun. Kent testified Barnes awoke and appellant and Williams told him "they [were] going to kill him and they wanted all his money." After the shooting, she saw appellant, Williams, and Raveiro divide Barnes's cash and drugs at Raveiro's home. At trial, Kent testified that Raveiro threatened to kill her brother if she told anyone about the crime and made her help clean the blood at his home. Kent also testified she lied about the murder at first to police because she feared for her brother, but she told the truth after they agreed to protect him.

2

*Thomas v. State*, No.14-04-00472-CR, 2005 WL 3359702 at *1 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd) (not designated for publication). Thereafter, the jury found petitioner guilty as charged. *Id.*, Clerk's Record, page 125. After a punishment hearing, the jury assessed punishment, enhanced by one prior conviction, at fifty years confinement in TDCJ-CID and a $10,000 fine. *Id*.

On direct appeal, petitioner sought relief on the ground that the evidence was legally insufficient to support the conviction. *Thomas*, 2005 WL 3359702 at *2. In affirming the state district court's judgment, the intermediate state appellate court found sufficient evidence to support the conviction on identification testimony. *Id*. at *2. Petitioner also complained on direct appeal that the jury charge regarding conspiracy was erroneous. *Id*. at * 4. The Fourteenth Court of Appeals found the error to be harmless. *Id.* The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review ("PDR"). *Thomas*, PD-174-06. (Docket Entry No.1).

Petitioner then filed a state habeas application, seeking relief on the following grounds:

1. He was denied the effective assistance of counsel at trial;

2. He was denied due process and a fair and impartial trial because the state district court failed to admonish him on the consequences of a plea of true to the enhancement paragraph; and,

3. He was denied due process by the submission of erroneous information regarding his prior conviction to the jury during the punishment phase of trial.

*Ex parte Thomas*, Application No.WR-67,669-01, pages 1-24. The state district court entered Findings of Fact and Conclusions of Law on petitioner's ineffective assistance of counsel claim. *Id*. at 93-94. The Texas Court of Criminal Appeals denied the application without written order on the trial court's findings without a hearing. *Id*. at inside cover.

In the pending petition, petitioner seeks federal habeas relief on the following grounds:

1. Petitioner was denied the effective assistance of counsel at trial because counsel made prejudicial comments about him, conceded his guilt, and summarized the evidence favorable to the prosecution during the punishment phase of trial. Petitioner also alleges that trial counsel failed to:

    a. Prepare him to testify during the punishment phase of trial;

    b. Explain the law of parties that resulted in his rejection of the State's plea offer; and,

    c. Investigate the validity of his prior conviction and pen packet; and,

    d. Seek out and present mitigating evidence at the punishment hearing.

2. He was denied due process of law and a fair and impartial trial because the state district court failed to admonish him about the consequences of his plea of true to the enhancement paragraph; and,

3. He was denied due process by the submission of erroneous information regarding his prior conviction to the jury during the punishment hearing.

(Docket Entry No.1).

Respondent moves for summary judgment on grounds that petitioner he has failed to meet his burden of proof to show the state court's adjudication of his claims are unreasonable or that he is otherwise entitled to federal habeas corpus relief. (Docket Entry No.15).

## II. STANDARD OF REVIEW

### A. Summary Judgment

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears

the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

Petitioner's federal habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a petition for discretionary review and in a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner on a petition for

discretionary review or in a state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) hold that this Court shall not grant relief unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, 'we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers'').

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state

court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them.  *Haines*, 404 U.S. at 521.

7

Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel at Trial

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692)). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. *Ogan*, 297 F.3d at 360. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993). Mere "error by counsel, even if professionally unreasonable, does not warrant setting

8

aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90. A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner complains that his trial counsel was constitutionally ineffective because she failed to (1) prepare him to testify, (2) explain the law of parties, (3) investigate the validity of his prior conviction and pen packet, (4) admonish him about the consequences of entering a plea of true to the enhancement paragraph, and (5) seek out and present mitigating evidence at the punishment hearing. (Docket Entry No.1). Petitioner also complains that his trial counsel

made prejudicial comments about him, conceded his guilt, and summarized the evidence favorable to the prosecution during the punishment phase of trial. (*Id.*).

The state district court, sitting as a habeas court, accepted the attestations of petitioner's trial counsel in the affidavit that she submitted in response to petitioner's state habeas application. *Ex parte Thomas*, Application No.WR-67,669-01, pages 86-92; 93-94. In its Findings of Fact and Conclusions of Law, the state habeas court expressly found that petitioner did not meet his burden of proof to show that he received ineffective assistance of counsel with respect to any of his claims. *Id*. at 93. The state habeas court specifically found that trial counsel (1) prepared and admonished petitioner prior to testifying at the punishment phase of trial, (2) explained the law of parties to petitioner, (3) investigated the validity of his prior conviction and pen packet and attempted to exclude the pen packet by voicing an objection, (4) admonished petitioner and explained the consequences of pleading true to the enhancement paragraph, and, (5) conducted an investigation to locate family and community members and other mitigating evidence. *Id*. at 93-94. The state habeas courts also found that petitioner refused to allow trial counsel to involve his family and provided no other mitigating evidence and the jury was provided mitigating evidence of petitioner's background, schooling, employment history, and petty arrest record. *Id*. at 94. The state habeas courts further found that "[t]rial counsel acted with a reasonable trial strategy during her closing argument." *Id*. at 93. The Texas Court of Criminal Appeals denied the application on the trial court's findings without a hearing.

The record supports the state habeas courts' findings. Trial counsel attested to the following, in pertinent part:

> Applicant was well advised of the pros and cons of testifying repeatedly over a period of 12 months by this counsel, by a third year law student second-chairing in the trial and by the investigator retained to investigate the offense and locate

mitigating evidence. He was drilled over and over on the proper way to testify in the presence of a jury. He was repeatedly cautioned not to volunteer any information during cross-examination. Rather than following my advice, and sticking to only the offense/arrest raised by the prosecutor, Applicant volunteered some 20 arrests.

As to whether counsel explained the law of parties and the application of the law to the elements of the Murder indictment to the applicant, I submit that the Applicant was instructed right from the start that the prosecution case rested on the jury applying the law of parties to the facts and circumstances of the homicide. In fact the law was explained to this applicant and relationship to the other co-defendants was reduced to the simplest form to assure that the Applicant was aware of his liability in the offense. The investigator also spent several days with the Applicant going over the facts, including a recording of his statement to police. The trial team, that being counsel, the third year law student and the investigator spent many hours reviewing video recorded statements from the co-defendants, witnesses and law enforcement officers looking for facts to separate the Applicant from the others in attempt to get him out of the loop of the Murder scheme. Counsel and other member[s] of the team poured over the transcript from the other two trials, even sat in on the testimony of a few witnesses during the trial of the co-defendants looking for facts or statements to take the applicant out of the law of parties.

As to whether counsel investigated the validity of the prior conviction and pen packet, I submit that the pen packet was thoroughly researched and proper objections were made at trial in attempt to exclude the pen packet and counsel's objection was over-ruled by the court.

As to whether or not counsel made prejudicial references to the client during final argument, conceded the client's guilt or argued the evidence in a manner favorable to the prosecution, I submit that any remarks made in closing argument were calculated to identify the Applicant as a follower, not the instigator of the plan to murder, and show that he was tricked into participation in a murder, when he only went to a robbery. All statement[s] made in final argument were meant to show a history of petty crimes and that he was not on the same level of criminal wrong-doing as "Cuban Charlie" and the actual "shooter[.]" The Applicant was a participant in the robbery and had no intent to commit murder. The argument of counsel attempted to persuade the jury away from the charge of Murder. Applicant had already confessed on video tape, which was admitted in evidence, to being a participant in a robbery. Also the jury had already found the applicant guilty, so counsel could hardly argue against his guilt; instead the punishment focus was to paint the Applicant as a follower, low level, petty offender who would best be punished at the minimum. The State had offered 30 years and the applicant rejected the offer. That rejection is part of the record.

>As to whether counsel warned client of the consequences of a plea of 'true' to the Enhancement paragraph, I submit that he was admonished as to the enhancement punishment in the likely event the paragraph would be admitted. He was also advised that he had already informed the jury of his confinement in jail in his video taped statement and by his own testimony, as he testified that he had met "Cuban Charlie" in jail in his home town and that is how he was able to travel to Galveston County.
>
>As to whether counsel allowed erroneous information to be submitted to [the] jury at the punishment stage, I submit that such complaint is without merit. Only mitigating evidence of his background, schooling, employment history and petty arrest record was before the Jury.
>
>As to whether counsel sought out and presented mitigating evidence at the punishment phase, counsel submits that considerable time and research was conducted to attempt to find family members, members of the community, and other evidence to mitigate his punishment liability. The applicant would not allow counsel to involve his family and he could give us no other mitigating evidence.

*Id.* at 90-91.

The record also supports trial counsel's attestations with respect to her trial strategy to portray petitioner as mid-level criminal who was duped by Cuban Charlie into participating in a murder scheme, particularly in light of petitioner's confession and his testimony about his lengthy criminal history. *Thomas v. State*, No.14-04-00472-CR, Reporter's Record, Volume 7, pages 15-23; 68-74. The record also shows that trial counsel elicited mitigating evidence of petitioner's background, education, employment history, petty arrest record, his success at the ISF facility, his completion of parole, and his experience as a crime victim and a gang member during the punishment hearing. *Id.* at 5-14.

The record, however, does not reflect that trial counsel objected to the admission of the pen packet. In fact, the record shows that she affirmatively stated that she had no objection to the admission of the pen packet. *Id.* at 4. Petitioner, however, fails to show that any error with respect to the admission of the pen packet was prejudicial. Petitioner entered a plea of

true to the enhancement paragraph charging him with the 1996 drug conviction; he testified that he committed the offense and was given community supervision, pursuant to a plea agreement. He attested that following several violations of his community supervision, he agreed to a three year sentence on the 1996 conviction and that he served six months of the sentence in jail and was then released on parole. *Id*. at 3, 9-10.  Because the jury heard evidence of petitioner's felony conviction, the sentence assessed following revocation of his probation, and the time he served in jail for the drug conviction, petitioner fails to show that he was actually prejudiced by the admission of the pen packet or his trial counsel's failure to object to its admission during the punishment phase of trial.

With respect to petitioner's complaints regarding his trial counsel's performance, petitioner fails to present any evidence contravening his trial counsel's affidavit or rebutting the state habeas courts' findings.  Accordingly, petitioner fails to meet his burden under the AEDPA with respect to his Sixth Amendment claim.

### B. Due Process

Habeas relief is not granted to correct every error committed by the trial court; only errors of constitutional magnitude are cognizable by a federal habeas court.  *Mabry v. Johnson*, 467 U.S. 504, 507 (1984).  To be actionable on federal habeas review, trial error must be so grave that it amounts to a denial of the constitutional right to substantive due process, *i.e.*, the error made the trial fundamentally unfair.  *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 24 (1981).  An error renders the trial fundamentally unfair if there is a reasonable probability that the verdict would be different had the trial been conducted properly.  *Guidroz v. Lynaugh*, 852 F.2d 832, 835 (5th Cir. 1988).  Such error is harmless, on federal habeas review of a state conviction, unless it "had substantial and injurious effect or influence in determining the jury's

verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Under this standard, a petitioner is not entitled to habeas relief based on trial court error unless he can establish that the error resulted in actual prejudice. *Id.* at 637.

Petitioner contends that he was denied due process of law because neither his trial counsel nor the state district court admonished him about the consequences of entering a plea of true to the enhancement paragraph. (Docket Entry No.1).

"A plea of guilty is more than an admission of conduct; it is a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Moreover, a defendant waives several federal constitutional rights when a guilty plea is entered in a state criminal trial. *Id.* at 243. Therefore, due process requires a trial judge to accept a defendant's guilty plea only upon an affirmative showing that the plea was intelligent and voluntary. *Id.* at 242. A plea to an enhancement paragraph for a habitual offender is not the functional equivalent of a guilty plea to a principal charge. *See Johnson v. Puckett*, 930 F.2d 445, 449 n.3 (5th Cir. 1991). By pleading true to an enhancement paragraph, a defendant concedes that he has a prior conviction that can be used to enhance his sentence on the current conviction. *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988). Because a defendant entering an enhancement plea does not possess the "full panoply of due process or other constitutional protections which attend the determination of guilt or innocence," the Fifth Circuit does not require an affirmative showing of an informed and voluntary plea to an enhancement paragraph in the record. *Long v. McCotter*, 792 F.2d 1338, 1345-46 (5th Cir. 1986). Instead, the court considers the "totality of the circumstances" to determine whether a plea of true to an enhancement paragraph was voluntary and intelligent. *Holloway*, 838 F.2d at 793-94.

The state habeas courts found that petitioner's trial counsel admonished and explained to petitioner the consequences of pleading true to the enhancement paragraph. *Ex parte Thomas*, Application No.WR-67,669-01, page 93. The record supports such findings. In her affidavit, trial counsel attested that petitioner was admonished as to the enhancement punishment. *Ex parte Thomas*, Application No.WR-67,669-01, pages 90-91. In a pre-trial hearing, petitioner's trial counsel proffered to the court petitioner's affidavit, in which he attested that the range of punishment for the murder offense was life or 99 years. *Thomas v. State*, No.14-04-00472, Reporter's Record, Volume 2, pages 8-9. Trial counsel asked petitioner if he understood that "because of the enhancement and if it's found true the minimum is 15 years . . . and a ten thousand dollar fine." *Id.* at 8. Petitioner signed the affidavit acknowledging his understanding of the same and declined the State's plea offer of thirty years. *Id.*, Clerk's Record, page 93.

After petitioner was found guilty by the jury, the state district court arraigned petitioner on the enhancement paragraph in the indictment. *Id.*, Reporter's Record, Volume 7, page 3. Without any admonishment, petitioner entered a plea of true to the enhancement paragraph. *Id.* Thereafter, the pen packet to petitioner's felony drug conviction was admitted without objection. *Id.* at 4.

Although the record does not reflect that the state district court questioned petitioner about his understanding of entering a plea of true to the enhancement paragraph, the record of the pretrial hearing reflects that petitioner was specifically advised by trial counsel regarding the consequences of his plea to the enhancement paragraph. Furthermore, petitioner indicated his understanding of the same by signing the affidavit. Accordingly, petitioner was not

15

denied due process by the state district court's failure to admonish him about his plea to the enhancement paragraph.

Petitioner also complains that he was denied due process because the state district court "allowed the prosecutor to present erroneous, misleading information associated with the prior conviction in the penitentiary pen packet to the jury for their review and consideration to determine their range of punishment." (Docket Entry No.1). Petitioner maintains that the state district court submitted the pen packet to the jury and that such packet contained erroneous information showing that he went to prison for five years sentence for the 1996 drug conviction. (*Id.*). The record shows that after the pen packet was admitted into evidence, the prosecutor explained to the jury, without objection, that the packet "includes [petitioner's] prior judgment on the second degree possession of cocaine case that shows where he was incarcerated in the penitentiary for five years." *Thomas v. State*, No.14-04-00472, Reporter's Record, Volume 7, page 4.

Petitioner further maintains that the prosecutor "redouble[d] the damaging effect of the erroneous information contained in the pen packet in his final argument" because he stated that petitioner had actually gone to the penitentiary on the conviction. (*Id.*). Specifically, petitioner complains of the following argument:

> I lose patience with criminals that after they go to the penitentiary instead of they are going to straighten up and fly right, they are going to turn their life around, whatever they've got to do, whether they have to go to church or whether they have to take a meaningless job and be the best dishwasher they can be, I don't know what it is. Mow the yard, whatever it is, or then there are the people that just decide to be criminals instead of better people, and that's what we have got here. When he gets out of prison he wants to graduate as a better criminal.

*Id.*, Volume 7, page 80. Petitioner claims this erroneous reference to the penitentiary inflamed and prejudiced the jury to impose a fifty year sentence. (Docket Entry No.1).

16

Although the prosecutor erroneously stated, without objection, that the pen packet showed that petitioner had been to the penitentiary and implied in closing argument that petitioner had been to the penitentiary, the record reflects that petitioner expressly informed the jury at least twice during the punishment phase of trial that he had not been to the penitentiary. The record shows that shortly after the prosecutor informed jurors about petitioner's pen packet, petitioner testified that he sold drugs, got caught, and received a five-year probated sentence. *Id*. at 7. He attested that he violated his probation several times and was sent to jail for months at a time. *Id*. Petitioner indicated that he violated his probation so many times that his probation officer told him that he was going to the penitentiary for five years. *Id.* at 8. Petitioner indicated that he was sent to boot camp for three months and then was released to high risk probation. *Id*. at 8-9. He violated the terms of probation once more and his attorney negotiated a three-year sentence with the trial court. *Id*. Petitioner attested that he served only six months of his sentence in ISF and was released to parole. *Id*. at 10. He affirmatively stated that he was never incarcerated in the penitentiary. *Id*. at 9. He explained to the jury that the pen packet was created when he went to boot camp. *Id*. at 9-10.

On cross-examination, petitioner explained that he went to jail after the state district court gave him a three-year sentence. *Id*. at 37. He was paroled out of jail but violated the terms of his parole. *Id.* at 37-38. He was given a warning but soon violated his parole again. *Id*. at 38-39. Then he was sent to ISF, which petitioner likened to jail but with more privileges. *Id.* at 39-40. Petitioner attested that he spent six months in ISF and then was released to parole. *Id*. at 42-43.

Although the prosecutor misstated petitioner's criminal history with respect to the length and place of incarceration, the record does not show, given petitioner's testimony about his

17

criminal history, that the misstatements had a substantial and injurious effect or influence in determining the jury's assessment of punishment. Accordingly, petitioner fails to show that he was denied due process of law during the punishment phase of trial.

Respondent is entitled to summary judgment on petitioner's claims.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.15) is GRANTED.
2. Petitioner's claims against respondent are DENIED, and the habeas action is DISMISSED with prejudice.

3. All pending motions, if any, are DENIED.

4. A certificate of appealability is DENIED.

SIGNED at Houston, Texas, this 26th day of August, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE